UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEREMY LARUE,

    Plaintiff,

v.                                                                                               CAUSE NO. 3:21-CV-38 DRL

CORPORAL DAVID FAZIO *et al.*,

    Defendants.

## OPINION AND ORDER

Officers arrested Jeremy LaRue for resisting law enforcement and obstructing an investigation after a call reported a verbal altercation at his home. Mr. LaRue alleges a violation of his constitutional rights. He claims Corporal David Fazio and Officer Rachel Harvey used excessive force when arresting him.[1] The defendants ask for summary judgment. The court grants the motion.

## BACKGROUND

On January 5, 2019, Jeremy LaRue and his girlfriend, Melissa Cabanting, yelled at each other in their driveway, and an anonymous caller alerted the police [37-1 Tr. 48; 37-2 ¶¶ 6-7]. Officers Harvey and Glueckert initially responded to the dispatch [37-2 ¶ 6, 37-3 ¶ 6]. When the officers arrived, no one was in the driveway [37-3 ¶ 8]. Mr. LaRue and Ms. Cabanting had gone inside, and she had gotten into the shower [41-4 ¶¶ 5, 7-8].

Officers Harvey and Glueckert knocked on Mr. LaRue's door; and, when he answered, they asked to see Ms. Cabanting [37-1 Tr. 51-52]. Mr. LaRue informed the officers that she was in the shower [37-1 Tr. 52]. At this point, Corporal Fazio arrived and joined Officers Harvey and Glueckert at the door [37-

---

[1] Mr. LaRue consents to the entry of summary judgment for St. Joseph County and Corporal Briana Glueckert, and he abandons his state law and other claims. The court thus grants summary judgment for the defendants on Counts II, III, IV, and V of the complaint, as they are abandoned and leave only Mr. LaRue's claims of excessive force against Corporal Fazio and Officer Harvey.

4 ¶¶ 6-7; 41-5 Tr. 11]. Mr. LaRue told the officers they would have to wait to see Ms. Cabanting, and he wouldn't let them into his home [37-1 Tr. 52].

Officer Harvey entered the home over his protests, and the other two officers followed [37-1 Tr. 52; 37-2 ¶¶ 14-15]. When the officers walked through the doorway, Mr. LaRue became "irate" [37-2 ¶ 16] and argued with officers about needing a warrant [37-1 Tr. 52]. The officers didn't observe evidence in the home of a domestic disturbance [41-5 Tr. 19], but they wanted to ensure Ms. Cabanting's safety [37-2 ¶ 17]. Mr. LaRue yelled for Ms. Cabanting's minor daughter to go get her mother [37-1 Tr. 53] and screamed at the officers [37-2 ¶ 18].

Still concerned about Ms. Cabanting, Officer Harvey attempted to go upstairs to see her, but Mr. LaRue followed and tried to push past her to get to Ms. Cabanting [37-1 Tr. 53; 37-2 ¶ 20]. Officers told Mr. LaRue to stay downstairs so that they could speak with Ms. Cabanting privately to make sure she wasn't harmed [37-3 ¶ 17]. Ms. Cabanting eventually emerged from the shower and saw the events unfold from the top of the stairs [41-4 ¶ 8; 41-5 Tr. 18]. Mr. LaRue grew increasingly agitated, yelled at Officer Harvey not to go upstairs, and he tried to push past her [37-2 ¶¶ 20-22].

When Mr. LaRue refused to move off the stairs, "the discussion got louder," and a struggle ensued [37-1 Tr. 54; 37-2 ¶ 25; 37-3 ¶¶ 17-21]. Mr. LaRue refused orders to put his hands behind his back, and officers felt him tense up and pull away, moving toward Officer Harvey [37-3 ¶¶ 20-21]. Corporal Fazio then grabbed Mr. Larue and pulled him off the stairs [37-4 ¶¶ 20-21; 37-1 Tr. 88]. Mr. LaRue complied with an order to get on his stomach, but he didn't give officers his hands to be handcuffed [37-4 ¶¶ 23-26]. Corporal Fazio then got on top of Mr. LaRue and tried to handcuff him [41-4 ¶ 10; 37-4 ¶¶ 24-27].

While he tried to subdue Mr. LaRue, Corporal Fazio placed his knee on Mr. LaRue's right hand, and he pulled back on Mr. LaRue's fingers [41-4 ¶ 10]. He didn't stop when Mr. LaRue complained that he felt like Corporal Fazio was about to break his hand [41-4 ¶10]. Corporal Fazio then leaned forward, attempting to cuff Mr. LaRue's left hand, and more of his body weight shifted to Mr. LaRue's right hand

[37-1 Tr. 56]. Mr. LaRue heard a pop when Corporal Fazio shifted his weight, "still trying to get the cuffs on [LaRue's] left hand" [37-1 Tr. 56]. Corporal Fazio threatened to use a TASER on Mr. Larue before Mr. Larue complied and was handcuffed [37-4 ¶¶ 23-27]. Mr. LaRue continued to yell and be noncompliant for a few more minutes and was told he would be allowed up when he calmed down [37-3 ¶ 29]. Mr. LaRue then stopped "with the yelling and cussing" because of the pain [37-1 Tr. 56].

Once Mr. LaRue had calmed enough to stand, Officers Harvey and Glueckert took him outside, where he refused to sit on the front porch before being taken to Officer Harvey's squad car and detained while officers completed their investigation [37-3 ¶¶ 30-32]. They then arrested Mr. LaRue for resisting law enforcement [37-4 ¶ 30]. Mr. LaRue later had his hand x-rayed, and he appeared to have a hand fracture [41-4 ¶ 13, 41-2].

## STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could find in its favor to prevent summary judgment. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny the motion when there is admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in a light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

DISCUSSION

Mr. LaRue alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, Mr. LaRue must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

He advances a Fourth Amendment excessive force claim against Corporal Fazio. Use of force against a suspect is a seizure subject to the Fourth Amendment's reasonableness requirement. *Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021). When determining the reasonableness of force, the court considers the circumstances, including the severity of the crime, the immediate threat the suspect posed to the safety of officers and others, and if the suspect actively resisted or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396. In addition, the court considers "whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The court must consider the danger posed if the suspect is left unattended. *Id.*

The analysis requires an inquiry into "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quotations omitted). Courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. An officer acts reasonably when deploying force if he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

4

*Graham*, 490 U.S. at 396-397. Ultimately, the fundamental question is "whether the totality of the circumstances justified a particular sort of . . . seizure." *Garner*, 471 U.S. at 8-9.

Corporal Fazio asserts qualified immunity. The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If no constitutional right was violated, there is no need for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id.* "A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013) (quotations omitted). "[A] case holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). The plaintiff bears the burden of proving that the right is clearly established by either pointing to a similar case or "showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

A.   *Officer Harvey.*

The defendants correctly point out that Mr. LaRue never brought an excessive force claim against Officer Harvey. Mr. LaRue brought five claims when he sued in December 2020. The deadline for amending the pleadings was November 26, 2021, over two years ago. Mr. LaRue didn't attempt to add any claims until he responded to the summary judgment motion, not even when he testified during his

5

September 2023 deposition that he believed it was Officer Harvey ("the blonde one") and not Corporal Glueckert who kicked him [37-1 Tr. 96].

Generally, a "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *accord Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). This is not a situation in which the pleading articulated facts from which Mr. LaRue is now advancing just a new legal theory; indeed, the complaint never implicated Officer Harvey in any excessive force. Instead, Mr. LaRue wants to raise an entirely new claim, based on new facts, and that isn't permissible on this record. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489 (7th Cir. 2023); *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017).

When considering whether to allow a plaintiff constructive leave to amend, which is rarely appropriate, the court considers the potential prejudice to parties. *See Schmees*, 77 F.4th at 490. Allowing a new claim against an unsuspecting defendant months after discovery has concluded would prejudice Officer Harvey and cause unreasonable delay. Mr. LaRue had plenty of time to amend his complaint; justice does not require allowing him to do so now. *Id.* The court denies Mr. LaRue's attempt to introduce a new claim at this late stage and grants summary judgment for Officer Harvey.

B. *Corporal Fazio.*

Mr. LaRue's remaining claim is that Corporal Fazio used excessive force against him when he continued to kneel on his hand after being told that it was about to break. Mr. LaRue argues that there is a factual issue about whether Corporal Fazio used excessive force when he knelt on top of Mr. LaRue's hand, applying more pressure and pulling up on Mr. LaRue's fingers after he yelled that it was going to break. He also alleges that the force was intended to break his hand.

Officers are permitted to use some force when making a valid arrest. *Catlin v. City of Wheaton*, 574 F.3d 361, 366 (7th Cir. 2009). Mr. LaRue cites the general proposition that excessive force cases often present factual issues for the jury, and they can, but that is often true when parties "tell different stories

6

about what happened." *Catlin*, 574 F.3d at 367. Here, both parties agree on critical facts, so a jury wouldn't have to choose between two competing narratives. *See id.*

First, officers were trying to reach an alleged victim, Ms. Cabanting, after responding to a call about potential domestic violence, albeit only a verbal conflict [37-1 Tr. 51-52]. Second, Mr. LaRue tried to interfere with officers and didn't comply with orders, telling them, "I'm not gonna let you walk into the bathroom" [37-1 Tr. 53-54, 56, 125]. Third, Mr. LaRue was yelling and aggravated during the encounter and interfered by getting between two officers and Ms. Cabanting [37-1 Tr. 53-54, 81-82]. Fourth, officers told Mr. LaRue that he could not go upstairs to Ms. Cabanting [37-1 Tr. 82 ("They were telling me that no, I can't go up there to where Melissa's at"); 37-2 ¶ 22]. Fifth, Corporal Fazio used force to get Mr. LaRue off the steps and into handcuffs after he resisted [37-1 Tr. 54, 56; 37-4 ¶ 21]. Sixth, the force ended when Mr. LaRue calmed down and was taken outside, though he passively continued to disobey orders [37-1 Tr. 56]. The parties dispute some details—how Mr. LaRue landed, exactly what orders he heard—but the core facts for a reasonable jury boil down to this: Mr. LaRue tried to prevent access to a potential victim and actively resisted arrest that required force. This led to Corporal Fazio kneeling on Mr. LaRue's hand while trying to subdue and handcuff him.

Force is "only reasonable when it is proportional to the threat posed." *Alicea*, 815 F.3d at 288. It is reasonable to put someone in a prone position to prevent injury to the individual and the officers. *Padula v. Leimbach*, 656 F.3d 595, 604 (7th Cir. 2011). The "reasonableness of kneeling on a prone individual's back during the arrest turns, at least in part, on how much force is applied. Kneeling with just enough force to prevent an individual from 'squirming' or escaping might be eminently reasonable." *Abdullahi v. City of Madison*, 423 F.3d 763, 771 (7th Cir. 2005); *see also Catlin*, 574 F.3d at 367-68 (tackling and kneeling on back of resisting individual was reasonable). Noncompliance with orders or other passive resistance requires only minimal use of force, but struggling with officers may warrant escalation. *See*

7

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524-25 (7th Cir. 2012). Interfering with or attempting to interfere with an officer's duties can make force more reasonable. *See Dawson*, 803 F.3d at 833.

Mr. LaRue concedes that he was disobeying orders when he headed upstairs [37-1 Tr. 82, 125]. The officers were trying to get to a potential victim after a domestic violence call, and he obstructed their path.[2] *See Dawson*, 803 F.3d at 833. He followed an officer up the stairs [37-1 Tr. 81; 37-4 ¶ 17]. In an escalating situation, officers were concerned that Mr. LaRue posed a threat to the potential victim and the officers in his increasingly agitated state. Even Mr. LaRue acknowledged that he could see why officers would have been concerned [37-1 Tr. 81]. When officers could not get him to move, the law permitted them to use some force to arrest him. Rather than use the threatened TASER, Corporal Fazio pulled Mr. LaRue off the stairs and got on his back [37-4 ¶¶ 23-25; 41-4 ¶ 10]. Once he resisted arrest, the officers were entitled to use reasonable force to subdue Mr. LaRue, including kneeling on him, and no reasonable jury could say otherwise on this record. *Abdullahi*, 423 F.3d at 771. Mr. LaRue acknowledges that Corporal Fazio was "trying to get the cuffs on [his] left hand" [37-1 Tr. 56; 37-4 ¶ 26].

Mr. LaRue points to an interrogatory answer, which states that Corporal Fazio "put his knee on my hand and bent my hand backwards, I told him that he was going to break my hand, and then he put more pressure on my hand with his knee and continued pulling my hand back and the bone popped" [41-7 at 9]. Nothing in this contradicts that Corporal Fazio was pinning Mr. LaRue's right hand down while trying to handcuff his left hand and leaned forward, causing the increase in pressure, as Mr. LaRue testified to in his deposition. Mr. LaRue told Corporal Fazio that it felt like he was going to break Mr. LaRue's hand, but even Mr. LaRue says he doesn't know whether Corporal Fazio meant to put additional weight on his hand when he leaned forward [37-1 Tr. 56]. *Cf. Miller v. Gonzalez*, 761 F.3d 822, 828 (7th Cir. 2014) (officer responded to similar comment with "I told you not to run," suggesting retaliatory

---

[2] Corporal Fazio explained that in domestic violence situations, police separate the involved parties so that one doesn't try to control the other [41-5 Tr. 14].

8

motive). Mr. LaRue says when Corporal Fazio leaned forward that he "wasn't even fighting him" [37-1 Tr. 56], though in a split-second moment where he engaged officers in actively resisting, continued to cuss and yell at officers until well after the pop, and refused to offer his hands to be cuffed, no reasonable jury could say Corporal Fazio used unreasonable force by pinning one hand while attempting to cuff the other. The pop in Mr. LaRue's right hand came when Corporal Fazio shifted his weight to try and reach Mr. LaRue's left hand [37-1 Tr. 56]. On this record, no reasonable jury could conclude that Corporal Fazio shifted his weight to unreasonably inflict pain or use unreasonable force on Mr. LaRue; even Mr. LaRue concedes that Corporal Fazio was trying to handcuff him [37-1 Tr. 56]. When Mr. LaRue stopped resisting, the officers let him up off the ground [37-1 Tr. 56; 37-4 ¶ 29].

The officers never pulled out a weapon, like a gun or even a TASER [37-1 Tr. 76-77]. Mr. LaRue was eventually escorted out of the home and taken to a police vehicle while officers completed the investigation and ensured that Ms. Cabanting wasn't harmed [37-2 ¶ 32]. Even after being handcuffed, Mr. LaRue admits he continued to disobey orders [37-1 Tr. 56]. On this record, no reasonable jury could find that kneeling on Mr. LaRue's hand while trying to handcuff the other was objectively unreasonable to temporarily restrain and subdue Mr. LaRue and arrest him so that officers could ensure Ms. Cabanting's safety. The totality of these circumstances makes the use of force objectively reasonable. *Graham*, 490 U.S. at 397. With no constitutional right violated, Mr. LaRue cannot make out a § 1983 claim, and Corporal Fazio also is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201. The court grants summary judgment.

## CONCLUSION

Accordingly, the court GRANTS the defendants' motion for summary judgment [35] and DENIES AS MOOT the motions for extensions [39, 40]. This order terminates the case.

SO ORDERED.

May 6, 2024                              *s/ Damon R. Leichty*
                                          Judge, United States District Court